WESTERN UNION TELEGRAPH COMPANY v. JOHN J. LYDON.

No. 3104.

1. **Testimony to Mother's Love of Her Son.**—In an action against a telegraph company for negligent delay in delivering a message sent by plaintiff, causing his failure to reach his mother before her death, it was testified to that "he was his mother's favorite child." Motion to exclude it was overruled. *Held*, its admission was not error.

2. **Competent Evidence—Declarations of Employes.**—The plaintiff after sending the message while he was waiting for an answer was told by the operators that his "message has been delivered at the other end all right." This assurance influenced his action in going to his mother. *Held*, these facts were competent and relevant to explain his delay.

3. **Competent Evidence.**—After waiting two days plaintiff had sent another dispatch to same place to another person. To this he received an answer within less than twenty-four hours and at once started. These facts were relevant to explain his delay, and might tend to show the time in which an answer should have been received to his first dispatch.

4. **Contributory Negligence—Charge.**—It was for the jury to determine under the circumstances whether the plaintiff was chargeable with negligence in failing to reach his mother. It was proper to refuse a charge that the delay for three days was of itself negligence.

5. **Same.** — See charge approved in leaving the circumstances to the jury, to be passed upon as negligence or not on part of plaintiff.

APPEAL from Tarrant. Tried below before Hon. R. E. BECKHAM. The opinion states the case.

*A. H. Field,* for appellant, cited Hoyt v. Hudson, 41 Wis., 105; Norton v. Ittner, 36 Mo., 351; 2 Thomp. on Neg., pp. 1235–1237.

*Ball, Wynne & McCart,* for appellee.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellee to recover damages for the failure of appellant to transmit and deliver with proper diligence a telegraphic message. The petition charges that plaintiff's mother resided in the State of West Virginia and plaintiff in Tarrant County, Texas; that the following message was sent by his brother and received by him:

"WESTON, April 24, 1888.
" *To John J. Lydon, Fort Worth, Texas:*

"Mother is very ill with strangulated hernia; will not submit to operation. Answer.

[Signed] "MARTIN LYDON."

That plaintiff upon receiving said message was greatly distressed about the condition of his mother, and was especially anxious to be with her if her condition should become worse; and that desiring to be better advised as to her condition and to know whether it would be proper or advisable for him to start on the next train to West Union, which was the station at which he would leave the railroad to go to the home of his mother, he delivered to the appellant to be transmitted by it the following message:

"FORT WORTH, Texas, 4–24, 1888.
" *To Martin Lydon, Weston, W. Va.:*

"If mother is no better will go immediately to West Union.

[Signed] "JOHN J. LYDON."

For which appellee paid to the defendant its "reasonable hire;" "that had the said message been duly delivered to plaintiff's brother at Weston within a reasonable time he would have known that his message had been received by plaintiff, and he would have immediately replied to plaintiff's message to the effect that their mother had become much worse, and that the physicians attending her had despaired of her life, and that she was constantly inquiring for plaintiff and beseeching his presence, all of which statements were true, and plaintiff would immediately have started to his mother's home; that defendant negligently delayed during three days above the usual and proper time to transmit and deliver the said message to his brother, by reason of which plaintiff's brother did not know that the message sent

by him had been delivered, and naturally concluded that plaintiff was either absent from Fort Worth or was indifferent about his mother's condition, and that it would be useless to attempt to further communicate with him, and therefore did not send him any more messages, so that plaintiff failed to receive information of his mother's dying condition in time for him to reach her before her death; that plaintiff did reach his mother's residence about three hours after her death."

Judgment upon the verdict of a jury was rendered in favor of plaintiff for $2000.

We think that the petition stated a cause of action. The petition charged, and the plaintiff testified, "that he was his mother's favorite child." The defendant moved to exclude this evidence, upon the ground that it "indicated what the mother's feelings were, which was not the issue being tried." The court declined to exclude the evidence. It is not shown that the evidence was objected to when it was introduced, but if it had been we do not think it should have been excluded upon the objection made to it.

While juries in the absence of any evidence on the subject may act upon their own knowledge of the affection subsisting between a mother and her son, still the admission of evidence upon the subject may be proper, and we can not say that proof of a special regard felt and shown by a mother for one of her children may not be properly considered by the jury, in connection with other circumstances, in estimating the feelings of the child toward the parent.

The plaintiff testified, that after he had sent his dispatch and while he was waiting for an answer to it, at Fort Worth, the operators of defendant at that place told him that his message "had been delivered at the other end all right," which, as he did nŏt get an answer, caused him to suppose that his mother "was all right at home."

The defendant moved to exclude this evidence, "because they were declarations made after the act, after the message was sent from this end of the line, and after the contract for the transmission had been closed." The court refused to exclude this evidence. It was, we think, pertinent to explain the cause of plaintiff's delay. We can see no good reason why the declarations of the defendant's agent made under such circumstances should not be admitted.

Appellant's fourth assignment is, that "the court erred in permitting plaintiff to testify that he sent another message to another person, and in permitting plaintiff to prove the reply he received to said message, over the objections of defendant thereto."

The plaintiff was permitted to testify as follows: "Two days after I sent the message to my brother I sent one to Patrick Tierney, a man that was known to all of the people around there, a good friend of mine. I knew if there was anything wrong I could hear from him. I got a reply from him in less than twenty-four hours from the time I sent it

to him.  When I got the reply from Tierney I took the first train home."

The court did not permit the answer of Tierney to be read.  The evidence tended to show how long it required to send a message and receive an answer, and also to explain the plaintiff's conduct in delaying to start from Fort Worth.

Errors are assigned upon the refusal of the court to give the following charges at the request of the defendant:

"Plaintiff's own testimony in this case, which is uncontradicted by any one, shows that he received the message from Martin Lydon on the night of the 24th day of April, 1888, and that there were two trains daily thereafter on which he could have gone to see his mother, and that he failed to take five trains, on either of which he could have reached his mother's bedside prior to her death, and you are instructed that this negligence of plaintiff precludes any recovery by him for injury to his feelings by reason of his being deprived of being with his mother prior to her death.'

"If you find and believe from the evidence in this case that plaintiff received the message announcing the dangerous illness of his mother on the night of Tuesday, the 24th day of April, 1888, and that he failed to start to see his mother until the evening or night of the 27th day of April, 1888, and that there were two trains daily between said time, which he could have taken, on either of which he could have reached his mother prior to her death, then and in that event you must find for the defendant."

We do not think that it would have been proper for the court to give either of these charges.  It was the province of the jury to say whether or not the plaintiff's delay was accounted for and excused, in view of the entire evidence before them.  If the court had given them it would have been equivalent to a direction to find for the defendant, in disregard of pertinent testimony to the contrary.  The court had already fully charged the jury upon every issue, and as favorably to the defendant as the facts justified.

The eighth assignment is, that "the court erred in that portion of its charge by which it made the negligence of the plaintiff begin only after the lapse of sufficient time in which to have received an answer to his message, because the message received by him showed that his mother was dangerously ill, and the message sent by plaintiff was that he would take the train if mother was no better."

The charge objected to reads as follows:  "You are further instructed that if you believe from the evidence that the plaintiff himself failed to exercise that care or diligence to reach his mother after having sent said message and after the lapse of sufficient time in which to have received an answer, which a person of ordinary prudence would have done with the knowledge in his possession, and if he failed so to act,

and that negligence on his part prevented his reaching his mother before her death, you should find for the defendant."

It appears that when appellee received from his brother the first dispatch it would be several hours before the first train upon which he could take passage would leave Fort Worth, and that it was while he was necessarily so delayed that he sent his dispatch, hoping to receive an early answer. Under these circumstances, we do not think that the court should have told the jury that the law required that he should have acted on the first dispatch and not have trusted to getting another one. The question of his own diligence was one for the jury to decide upon the whole evidence, and it was so treated by the charge of the court.

The judgment is affirmed.

*Affirmed.*

Delivered November 27, 1891.